# COURT OF ERRORS AND APPEALS.

---

WILLIAM H. VAN WAGENEN and ANTHONY YEOMAN, appellants, and MARY HOPPER and others, respondents.

The case in Chancery is reported *ante*, page 684.

*P. D. Vroom* for the appellants.

*Wm. Pennington* for the respondents.

RANDOLPH, J. The defendant Coe, with his wife, gave a first mortgage to Wm. I. Ackerman, on the 2d of Feb'y, 1846, which was duly acknowledged and registered. He afterwards, on the 3d day of March, A. D., 1846, gave a second mortgage to the defendant Mary Hopper, to secure to her an annuity of $50 during her life; this was acknowledged on the same day, but not registered. Afterwards, on the 23d day of April, A. D., 1846, Coe and wife gave a mortgage on the same premises, to the complainant Van Wagenen, to secure the sum of $822.87, and this was acknowledged and registered on the same day, Mary Hopper's mortgage not then being registered. The dispute is as to which mortgage is entitled to priority of payment, that held by the complainant or that by Mrs. Hopper. According to the common law the latter would be entitled to priority, being first executing the common law adopted the civil law maxim, *qui prior est tempore potior est jure*, and held that all mortgages must be paid according to the priority of their respective dates, 2 *Cowen*,

204. According to the doctrine in England prior to the passage of the Statute of Ann, the mortgagee could not lose the benefit of his prior debt unless he had been guilty of actual fraud, as where a counsellor holding a mortgage, on being consulted with by another person, advised him to take a mortgage on the property without disclosing the fact that he had a mortgage, 2 *Vern.* 370, or where another fraudulently concealed his mortgage and advised a father to take a mortgage to secure a marriage settlement for his daughter, 3 *Atk.* 49. But the Statute of Anne, which required mortgages to be registered does not affect the question of notice; it leaves that as if the Statute had not been passed. 2 *Eden,* 228; 1 *Madd. Ch.* 328. By the Statute of New Jersey, Van Wagenen's mortgage has priority to Mrs. Hopper's, unless he had notice of its existence at or before the taking of his; and the only question for us to determine is a simple question of fact, whether complainant had such notice. This notice may be proved by the registry, or by positive or circumstantial evidence in the same manner any other fact is proved. Many persons suppose that the registry is essential to a mortgage or at least adds some sanctity or validity to it, but not so; it is not even a record, and cannot be proved as such. 7 *Halst.* 42; 2 *Harr.* 60. The only object of the registry is to give notice; and for that it is sufficient to all persons, whether they ever saw it or not; but it is only constructive notice, and in reality, though it be operative in law, is not practically as valuable as actual notice, proved by witnesses or circumstances. The registry act leaves the common law doctrine of notice where it was, and merely provides a new mode of giving notice, and in that point of view the fact of the complainant's prior registry is of no consequence. The question is, had he notice of Mrs. Hopper's mortgage? Owing to her want of legal information she can't prove this by the constructive evidence of registry, but is compelled to resort to witnesses, and by this she must satisfy us of the truth of the allegation, in the same way as she would have to satisfy us of any other fact she was bound to prove, or else she must fail in her claim.

The witness offered to prove the notice is Coe, the mortgagor,

who manifestly has no friendly disposition towards his mother-in-law, Mrs. Hopper, for he says her mortgage was given for her right of dower in a property which he bought at administrator's sale, she being one of the administrators, he thought he bought it clear, and still thought so at the examination, and that she should never get anything on her mortgage if he could help it. He swears positively that he twice informed Van Wagenen of the Hopper mortgage prior to the execution of his. This, if true, is sufficient to prove the notice, and to enable Mrs. Hopper to maintain her priority. It is indeed conclusive, unless Coe is mistaken or has perjured himself, both of which the complainant has attempted to prove. Has he succeeded? To prove the mistake, Mr. Woodruff is called to testify, who is in every respect a sufficient and credible witness. There is some discrepancy between him and Coe, growing out of the cross-examination of the latter, but in all essential particulars he strengthens Coe's testimony. It is evident from the whole case that Coe, and more than probable that Van Wagenen, and some other of the parties, labored under the very common impression that the first mortgage registered, or recorded as it is called, would take the property. When Coe tells Van Wagenen that Mrs. Hopper has a mortgage, he asks whether it has been recorded, and Mr. Woodruff says Coe asked him previous to the examination of witnesses, what would be the effect if Mrs. Hopper could prove that Van Wagenen had notice. So too it seems to have been the impression of all parties that Coe could not be a witness, and this may account for the inquiry to Woodruff, and for the remark that she could prove notice by her two sons, which it is evident was a mere boast. Again, a certificate was obtained from the Clerk, showing only that the Ackerman mortgage was a lien on the premises ; this was had at the execution of the complainant's mortgage, which was at Coe's house. Mrs. Hopper was at the same time in the kitchen, and Woodruff says there was something said at that time about giving her a mortgage. This then shows that he and his client knew of her claim, but as to giving her a mortgage, Mr. Woodruff must be mistaken, for this mortgage had been given and acknowledged weeks before. Coe refused to permit Wood-

ruff to call his (Coe's) wife, because the old woman (Mrs. Hopper) was there and would be mad. And after complainant's mortgage was executed they hurried it on record, Woodruff says, " under an apprehension that there might be somebody in the kitchen, *prepared to execute a mortgage*, and bring it on record before complainant. Now this could not be the reason in the nature of things, though no doubt Woodruff thought so at the time of examination. Complainant's mortgage was executed and acknowledged, and in three minutes could be lodged with the Clerk. If the *somebody* in the kitchen had the mortgage prepared to execute, still it would take time to do this, and still longer to send for an officer and have it acknowledged and then taken to the office. Complainant could have had no fears or cause for fears of any mortgage to be executed after he started from Coe's house for the Clerk's office; it could only have arisen from fear of a mortgage already executed. Mrs Hopper was in the kitchen. Something had been said, Woodruff says, about her getting a mortgage. A certificate had been got from the Clerk, which showed that her mortgage was not on record. A difficulty Coe says occurred at the acknowledgment of complainant's mortgage, which he says grew out of a refusal to have Mrs. Hopper's mortgage acknowledged in it to save him from trouble, and the Clerk's certificate was shown to him and he executed the mortgage. This seems reasonable and consistent with the facts, and the belief of the parties. Woodruff admits the difficulty, but says it grew out of Coe's saying he was forced to give the mortgage, and would not acknowledge it to be voluntary. This is not a very natural or consistent reason and I am inclined to think Woodruff mistaken, but whether or not it is not very important. But Coe swears positively that he notified Van Wagenen of Mrs. Hopper's mortgage. He had the opportunity to do so when the parties withdrew and talked by themselves; the evidence is not disproved, it is positive, and Mr. Woodruff does not positively deny notice; he says he *thinks* the first knowledge he had that Mrs. Hopper claimed priority over complainant's mortgage on the ground of notice, was derived from her answer, but he nowhere says that neither he or his client

had such notice, nor did he deny it when stated in his presence. Coe swears he had. All the circumstances go to show he had, and we must conclude that he actually had notice unless we believe Coe perjured himself, for which certainly there is not sufficient evidence.

It is true an effort was made to impeach Coe as a witness, by calling a number of witnesses to testify as to his general character for truth. These all, with one or two exceptions, do not attempt to prove his general character, but their particular belief growing out of one or two transactions in which Coe was a witness. In one of these he got a young man indicted, and on his single evidence convicted for throwing a stone in the night and hitting him; but he was mistaken, for it turned out afterwards that another boy did it, and from that and another circumstance, several witnesses have attempted to prove his character bad; but they only show bad feeling and particular circumstances, and not general character or legal evidence. I think all the evidence as to Coe's character may be traced to these transactions or grew out of them, or arose from the industry used in circulating them, and is either not evidence at all or entitled to very little weight. Certainly it does not overthrow Coe's evidence, supported as it is by circumstances, nor does it disprove the notice.

Decree should be affirmed.

NEVIUS, OGDEN and CARPENTER, Justices, and SINNICKSON, WALL, PORTER and SCHENCK, Judges, concurred in this opinion.

GREEN, C. J.  The only issue in the cause is upon a question of priority growing out of a conflict of encumbrances between the complainant and defendant, both being mortgagees of the same premises. The defendant's mortgage is prior in date but subsequent in registry to the complainants. The complainant's mortgage being first registered is entitled to priority, unless the complainant had notice of the existence of the previous mortgage. The whole question turns upon proof of the notice. Is that fact satisfactorily made out?

The complainant has the record evidence in his favor. By the law of the land his mortgage is entitled to priority, unless the fact of notice be clearly established.

The policy of permitting record testimony to be overthrown under any circumstances by mere parol proof, has been long and often questioned. All the cases agree, that in order to deprive a party of his priority upon the registry, the evidence to prove the notice should be clear and unequivocal. This would be required by the general rule of law, which imposes upon the party holding the affirmative the burden of proof. It is enforced by the consideration that the design of the evidence is, in effect to destroy record testimony. And the propriety of this view is still further enforced by the fact that the party holding priority by registry has done all that care and vigilance can do to secure his claim. If destroyed, it is done by evidence not growing out of any negligence of his own, not by any want of vigilance, not by any defect of his evidence, not by any testimony upon which he has placed confidence or upon whom he has relied to support his claim, but by parol evidence called by the adverse party, to prove a fact which in the very nature of things it will be difficult, if not impossible for the party to disprove. Upon the clearest rule of law, and the soundest principles of policy, the fact of notice should be established by clear and indubitable evidene. It should not rest upon a mere balancing of probabilities, a nice adjustment of the weight of testimony. It should be such that no reasonable doubt whatever could be entertained of the truth. Upon this point all the cases agree. The principle has not been drawn in question by counsel in argument.

The proof of notice in this cause rests upon the testimony of a single witness uncorroborated by circumstances. The witness is the mortgagor. He is the son-in-law of the defendant, whose priority he is called to sustain. He acted as agent for the defendant in the procurement of witnesses before the Master and in paying their fees. His character for truth and veracity is called in question, and is most seriously impeached by numerous witnesses, some of whom at least are men of high character and whose testimony is open to no exception.

Is this evidence upon which the priority of encumbrances should be affected, or record security destroyed? Is this the clear and indubitable testimony which sound policy, no less than the clear rule of equity demands? If this be indubitable testimony, what, it may be asked, is doubtful evidence? I cannot but apprehend that resting a question of priority upon such evidence is going very far to shake the security of all registered mortgages, and to unsettle well settled principles.

I treat the case as if there were no conflicting testimony, and as if the case rested entirely upon the evidence of the defendant's witness. It is insisted however, that the defendant's case derives material support from the evidence of Woodruff, the solicitor of the complainant, who was called as a witness in his behalf to contradict the statement of Coe, the defendant's witness. The complainant's mortgage was executed by Coe' in the presence of Woodruff, and was acknowledged before him as Master in Chancery. Coe stated in his testimony that notice of the defendant's mortgage was given to the complainant in the presence of Woodruff at the time of the execution of the complainant's mortgage. This fact is not in terms denied by Woodruff in his evidence, and this circumstance is relied upon as conclusive in the defendant's favor. But the utmost that can be alleged is that the witness is silent upon this point. Admitting, for the sake of the argument, that the witness is entirely silent upon the point, is it a legitimate conclusion against the complainants that the fact is not denied?

If this were the answer of the defendant under oath, the conclusion would be legitimate. His omission to deny is an admission of the fact alleged. But the testimony of a witness stands upon totally different ground. If the question had been asked the witness, and he had given an equivocal or evasive answer, there might be some force in the argument. But the omission in such case where there is no interrogatory may proceed from mere inadvertence. And no conclusion can be drawn against the party from the omission of the witness.

But is there in fact, any such omission as is alleged? Coe had stated in his testimony certain facts that occurred at the

44

execution of the complainant's mortgage. Woodruff in his testimony professes to give a detailed statement of what then transpired. He gives a circumstantial narrative of what was said and done on that occasion, materially varying from Coe's statement. But this is not all. On his cross-examination the witness says he has no recollection of anything besides what he has stated, that took place that can have any bearing on the matters in controversy in this suit. Now if the witness did remember what had been testified to by Coe, if he had received notice and was concealing it, or equivocating, does not that answer necessarily involve him in the guilt of perjury? Is it not as broad and unequivocal as language can be made? He first details what did take place; he then declares that he recollects nothing else material that occurred. And yet this evidence is relied on as corroborating the defendant's witness, because he did not in terms deny the statement of the defendant's witness.

The utmost I think that can be said of it is, that it is negative testimony, and does not necessarily impeach the testimony of Coe. But to derive from it an argument in support of the truth of Coe's statement, is not warranted.

The defendant's mortgage is unquestionably *just*. It was prior in date to the complainant's. It was given to secure her claim of dower upon her husband's estate, a claim always favored in law. The complainant's mortgage was taken to secure a prior indebtedness. He made no new advance when the mortgage was taken. He is not in a worse position by the loss of his security.

These circumstances create an impression that no injustice is done by the decree, and induce me not to regret that my brethren have felt themselves warranted in affirming the decree without the sacrifice of sound principle. I have not been able to arrive at the same conclusion, and am in favor of reversal.

McCARTER and SPEER, Judges, concurred in this opinion.
Decree affirmed.